Porter *et al. v.* Johnson, administratrix.

1. Where one owning real estate sues out in due and legal form a dispossessory warrant against another who entered as the tenant of a prior owner, and the warrant, in the absence of a counter-affidavit and bond, is by a proper officer duly executed 'and the tenant evicted, the latter cannot, unless the warrant was sued out with malice and without probable cause, maintain against the plaintiff in the dispossessory warrant an action for damages to or destruction of his business thus occasioned, there being no direct contractual relation between himself and such plaintiff.

2. It is not essential to the validity of a plea of justification that it should admit the existence of a right in the plaintiff which he alleges was violated by certain acts of the defendant, when the plea admits that the defendant did all the acts complained of in the declaration as wrongful, and justifies the same. Accordingly, where the declaration alleged possession by the plaintiff of certain premises under a contract of rent or lease for a given term, and that he was unlawfully and wrongfully expelled therefrom before the expiration of that term under a dispossessory warrant sued out by the defendant, a plea admitting the suing out of the warrant and the expulsion of the plaintiff under it at the time alleged, but averring that the proceeding was instituted without malice and upon probable cause, and setting out facts which, if established, would amount to probable cause, although it does not admit the existence of any contract under which the plaintiff held the premises, is nevertheless a good plea of justification.

3. Where a licensed retailer of spirituous liquors dies pending the term for which the license was granted, such license is not assets of the estate of the deceased in the hands of his administrator, nor can the latter legally continue the business under the license for the unexpired term covered by it.

4. Even in a case where damages to the business of a retailer of spirituous liquors, occasioned by his unlawful expulsion from his place of business, are allowable, the profits of the business for a period to elapse after the expiration of the retailer's license cannot be considered. Inasmuch as an existing license is limited to the time for which it was granted, and the obtaining of a new license depends upon the wills of other persons than the licensee, profits which might have been realized upon the business in case there had been no expulsion and the license had been renewed or continued are too remote and speculative.

5. Where J., who was in possession of certain premises, informed P., who claimed the right of possession to the same, that he (J.) held under a written lease from a former owner of the property, to

which P. was not a party, and P., upon ascertaining that such lease was of no validity in J.'s hands, gave him notice as a tenant at will or by sufferance to quit, and thereafter sued out a dispossessory warrant to expel J. from the premises, although J., while the notice to quit was pending, in a written warning to P. not to have the warrant executed, referred to the written lease only as the source of his right to retain possession, without mentioning any other lease, yet where before the actual suing out or execution of the dispossessory warrant P. was otherwise informed of an oral lease made directly to J. by P.'s vendor, then if this latter lease conferred upon J. the right to remain in possession of the premises, it was, under all the facts and circumstances, a question for the jury whether or not, in suing out the dispossessory warrant and having the same executed, P. acted without malice and upon probable cause.

April 29, 1895. Argued at the last term.

Action for damages. Before Judge VAN EPPS. City court of Atlanta. May term, 1894.

BRANDON & ARKWRIGHT and L. E. BLECKLEY, for plaintiffs in error. ARNOLD & ARNOLD and C. D. HILL, *contra.*

SIMMONS, Chief Justice.

1. There are various forms of action to which resort may be had, according to the nature of the facts, to recover for injury sustained by reason of the wrongful use of legal proceedings or process. Ordinarily the remedy is an action for malicious prosecution, or an action for the malicious use or abuse of legal process. Where an action has been instituted or prosecuted with malice and without probable cause, an action for malicious prosecution may lie. An action for malicious abuse of legal process will lie where legal process has been employed for some object other than that which it was intended by law to effect; for example, where a man has been arrested or his goods seized in order to extort money from him, even though it be to pay a just claim other than the one in suit, or in order to compel him to give up possession of a deed or other thing of value, not the legal object of the process. (Mayer *v.* Walter, 64 Pa. St. 285; Grainger *v.* Hill, 4 Bing. N. C.

212, 33 Eng. Com. Law Rep. 331; Anderson's Law Dic,
"Process.") In such an action it is not necessary to
allege want of probable cause. The malicious use of
legal process may give rise to an action, where no object
is contemplated to be gained by it other than its proper
effect and execution. In such case it is necessary to
show malice and want of probable cause. In some in-
stances an action for trespass *quare clausum fregit* or
trespass *vi et armis* will lie. In some cases the use of
legal proceedings or process may amount to a breach of
contract, and an action for breach of contract will lie.
Of course, if the action is for trespass or for breach of
contract, it is unnecessary to show malice or want of
probable cause.

Keeping the differences in these various forms of ac-
tion in view and excluding some *dicta* and loose expres-
sions of some of our predecessors, all the cases cited
from our reports by the learned counsel on both sides
may be reconciled and harmonized, and applied with
certainty to the allegations in the declaration now under
consideration. The first count in the declaration alleges,
in substance, that the plaintiff's intestate had rented a
certain house for a year, and that before the term ex-
pired, the defendants, knowing this, maliciously and
without probable cause sued out a dispossessory warrant,
seized his goods, put them into the street and ejected
him from the premises. According to all the decisions
on the subject, both in England and in this country, if
these allegations are sustained by proof the plaintiff
ought to recover. The only conflict in the decisions, so
far as my reading extends, is, that while a number of
the courts hold that malice and want of probable cause
in the institution of the proceeding are sufficient to au-
thorize a recovery, others hold that there can be no re-
covery unless there was a seizure of the person or prop-
erty. All concur in holding that where there is both

malice and want of probable cause, and a seizure of the person or property, a recovery may be had. See, upon this subject, an able and interesting review of the cases, by Mr. Lawson, in 21 American Law Register (New Series), 281, 353. So far as I know, no respectable court in this country has ever held that an action will lie against a person for having brought an action against another, unless he did so with malice and without probable cause. If the law were otherwise, the ending of an action would be merely the beginning of litigation. The defendant, immediately upon the failure of the action, would begin one against the plaintiff; and if the latter action should fail, the defendant therein would in turn bring another action; and so on *ad infinitum.* This court is fully committed to the doctrine that such an action is not maintainable without proof of malice and want of probable cause. The doctrine was announced in the case of *Sledge* v. *McLaren,* 29 *Ga.* 64, and has been repeatedly recognized in other cases since. In that case the declaration alleged that McLaren, by reason of suing out an attachment against the plaintiffs, had their goods levied on and sold at a great loss and sacrifice, and that the business of the plaintiffs was broken up and destroyed; and it was held that the plaintiffs must show malice and want of probable cause. See also *Wilcox* v. *McKenzie,* 75 *Ga.* 73; *Marable* v. *Mayer,* 78 *Ga.* 710; *Hyfield* v. *Bass Furnace Co.,* 89 *Ga.* 827. And see *Cook* v. *Walker,* 30 *Ga.* 519; *Riley* v. *Johnston,* 13 *Ga.* 260.

The plaintiff closes the first count in her declaration with the following allegation: "Plaintiff shows that the above acts also constituted malicious abuse of legal process. It is averred that the defendants were benefited by the tort, by gaining possession of said building." Whether the pleader intended this to be a separate and independent count, or whether it is alleged as an aggra-

vating circumstance to be taken in connection with the facts as set out in the first count, we are unable to say. If the latter was his intention, of course it must be taken in connection with the first count, and that count alleges that the act was done with malice and without probable cause. If intended as a separate and distinct count, as we have shown *supra,* the allegation of want of probable cause was not necessary; but if our views upon the abuse of legal process are correct, the conclusions drawn by the pleader are not correct. The object attained by suing out the warrant was not a perversion of the process. The obtaining possession of the premises was the very object of suing out the warrant. This being true, it could not be an abuse of legal process, after suing out the warrant, to have it executed by ejecting the tenant and obtaining possession of the premises. As we have shown, if the allegation had been that there was a malicious *use* of the process, malice and want of probable cause must have been alleged; but the allegation is that there was a malicious *abuse* of process, and under the facts we do not think the plaintiff could recover on this ground.

The second count, after setting out the facts as recited in the first count, alleges that "said defendants invaded his (the intestate's) legal right to the premises, and the ejection was an invasion and deprivation of the intestate's property, growing out of his contract rights under the lease from said Jones. The contract of lease with said Jones is here pleaded as matter of inducement, to show plaintiff's right to the premises and defendant's invasion of that right in ejecting him therefrom. This is a suit for a tort, based on invasions of a right springing from and breaches of duty imposed by a contract." This count further alleges that the plaintiff's intestate was damaged by loss of profits, breaking of furniture, etc. It will be observed that loss of the term of renting

is not embraced in the items of damage sued for. The plaintiff does not sue for a breach of the contract of renting, but sues for what she claims to be a tort arising out of a breach of contract, and alleges that the tort was committed by the defendants in having a legal process issued and executed. Malice and want of probable cause are not alleged in this count. The court in charging the jury treated it as a count for abuse of process, and held that damages could be recovered without proof of malice or of the want of probable cause. If what we have said in discussing the first count is correct, no person who conceives that he has a cause of action against another, and who, without malice and with probable cause, appeals to the courts to enforce his rights, is subject to suit for having done so. If, therefore, the proceedings to eject the plaintiff's intestate, although they may have broken up and destroyed his business, were commenced and prosecuted without malice and with probable cause, the defendants would not, in our opinion, be liable under this count. Under the view of counsel for the defendant in error, a landlord who commences proceedings to eject a tenant for holding beyond his term or for non-payment of rent, and who fails therein, is liable to the tenant for such damages as may result to the tenant's property or business, notwithstanding the landlord may have acted with probable cause and in the best of faith, and upon the advice of eminent counsel after a full investigation of the matter. If this were the law, every landlord commencing such proceedings would do so at his peril. Landlords and all other persons would be deterred from appealing to the courts to vindicate their rights, unless they felt absolutely certain of success. In nearly all cases the person against whom an action is brought sustains some loss or damage therefrom, even where he prevails in the action. He has to incur expense in employing counsel, loss of time from

his business in attending court, etc.   Under the conten-
tion of counsel for the defendant in error, he could main-
tain an action of tort against the plaintiff for any dam-
age he might sustain to his business or property.   The
law certainly does not countenance such a principle.

Counsel for the defendant in error claim that this
court is committed, by the decisions in *Juchter* v. *Boehm*,
67 *Ga.* 534, *Crusselle* v. *Pugh*, 71 *Ga.* 744, and *Smith* v.
*Eubanks*, 72 *Ga.* 280, to the position that damages may
be recovered in a case of this kind without proof of malice
and want of probable cause.   We do not agree with coun-
sel for the defendant in their construction of these cases.
In the case of *Juchter* v. *Boehm*, *supra*, the complaint was
twofold : (1) that there was a breach of contract; and
(2) that there was a malicious use or abuse of legal pro-
cess without probable cause.   Strictly speaking, these two
causes of action could not be connected, but there was no
demurrer, and therefore the court entertained jurisdiction
of both of them in the same case.   It was held that it
was not necessary to show malice and want of probable
cause ; and this conclusion was sound as to the count for
breach of contract, though not for the reason given by
Judge CRAWFORD in the opinion.   The authorities cited
on this point do not sustain him.   In the case of *Wilcox*
v. *McKenzie*, 75 *Ga.* 73, where the court held that an
action to recover damages for suing out and levying an
attachment, and for instituting proceedings to obtain
and serving summons of garnishment, could not be
maintained without proof of malice and want of proba-
ble cause, HALL, J., in commenting upon the case of
*Juchter* v. *Boehm*, *supra*, said there was " nothing in that
case inconsistent with the principle here announced,"
and " that damage flowing from the violation of an
agreement gives a right of action to the party injured in
consequence thereof, without an allegation and proof of
malice or want of probable cause, is unquestioned law."

The case of *Crusselle* v. *Pugh* was similar in principle
to that of *Juchter* v. *Boehm.* The facts of that case, as
shown by the report, were, that Crusselle had agreed
with Pugh to buy Pugh a house and lot and give him
title thereto. Pugh subsequently ascertained that Crus-
selle had taken the title in his own name, and when ap-
proached on the subject by Pugh, he admitted that he
had done so, but promised Pugh that he should have
the house and lot during his life. Crusselle afterwards
ejected Pugh from the premises by dispossessory war-
rant. Pugh brought his action for breach of the con-
tract, and this court held that he was entitled to recover.
There was a direct contract relation between the par-
ties, and Pugh, being damaged by a violation of the con-
tract, was entitled to recover. It will be observed that
in that case the question whether it was necessary to
allege and prove malice and want of probable cause, was
not made or dealt with. Nor was that question pre-
sented or passed upon in the case of *Smith* v. *Eubanks,*
*supra,* which was likewise a case of the breach of a con-
tract between the parties themselves. The declaration
was demurred to generally and upon the ground of mis-
joinder of counts, and JACKSON, C. J., in delivering the
opinion of the court, deals very briefly with the demur-
rer, and says that the case is covered by that of *City and
Suburban Railway* v. *Brauss,* 70 *Ga.* 368. That case,
however, was an action against a railroad for personal
injuries, and of course had no bearing upon the question
whether it was necessary in an action of this kind to
show malice and want of probable cause. In the pres-
ent case there was no direct contractual relation between
the parties, and therefore no breach of contract by the
defendants. It will be seen, therefore, that the cases
above referred to are not controlling authority for the
proposition that in an action of this kind it is not nec-
essary to allege and prove malice and want of probable

cause. Decisions are authoritative only upon the points actually before the court for judgment and actually decided.

2. Under the decision of this court in *Andrews* v. *Mitchell*, 92 *Ga*. 629, and the cases there cited, we think the plea stricken in this case was a sufficient plea of justification to authorize the defendants to submit to the jury the facts alleged therein. It admits possession, and that the warrant was sued out by the defendants and executed by dispossessing the plaintiff's intestate, and it gives their reasons for so doing and states the facts on which they rely to show that they acted in good faith and with probable cause. Under the decision above referred to, it is not necessary to admit the contract under which the plaintiff claims that her intestate held the premises; nor is it necessary in a plea of this kind to confess judgment. *Ocean Steamship Co.* v. *Williams*, 69 *Ga*. 251, (3). All that the defendants are required to admit is the possession, the suing out of the warrant and the dispossessing of the plaintiff's intestate. When they did this they assumed the burden of showing to the satisfaction of the jury that they did the act complained of without malice and with probable cause. If they had failed to introduce any evidence after filing the plea, the admissions in the plea would have been sufficient to authorize the jury to assess general damages against them, without the introduction of any proof. *Parker* v. *Lanier*, 82 *Ga*. 216.

3–4. It appears from the record, that when the plaintiff's intestate was ejected by the sheriff, he was conducting a retail liquor business upon the premises, and that for this purpose he had obtained a license from the proper authorities of the City of Atlanta, for a term ending June 30, 1890. His expulsion took place April 5, 1890, and on Sept. 1, 1890, he died. The plaintiff sought to recover in this action for loss of profits which

might have been made in the business from the time of the expulsion to the end of the year 1890. Counsel for the defendants requested the court to charge, that the plaintiff was not entitled to recover anything for loss of profits for that portion of the year during which her intestate was not living; and that "under the laws of this State and the City of Atlanta, loss of profits to a saloon-keeper in a case like this is too remote or speculative to be recovered as actual or special damage in any form, for or during a portion of the time during which license to carry on such a saloon has not been granted." The court refused to charge as requested, and error is assigned thereon.

We think the court ought to have charged the jury as requested on this subject. Inasmuch as an existing license is limited to the time for which it is granted, and the obtaining of a new license depends upon the wills of other persons than the licensee, profits which might have been realized upon the business, in case there had been no expulsion and the license had been renewed or continued, are too remote and speculative to be the basis of a recovery. Under the city ordinances of Atlanta, before the applicant for such a license could have his application considered, it was necessary first to get a recommendation of two of his neighbors, one of them an adjoining neighbor, besides the consent of his landlord, and after compliance with these conditions, the mayor and general council could in their discretion refuse a license. It is therefore altogether uncertain that a license could have been obtained by the plaintiff's intestate for the remainder of the year, too much so to be the basis of a recovery for loss of profits during that period. Assuming, however, that he could have renewed his license for the remainder of the year, the plaintiff, after his death, would not have been entitled to continue the business under a license granted to her

intestate.   A license to sell intoxicating liquors is per-
sonal to the licensee and is not such property as will pass
to his administrator as assets of his estate.   See Black
on Intoxicating Liquors, §131, and authorities there
cited.

5. It appears from the record, that before the defend-
ants purchased the premises occupied by Johnson, the
plaintiff's intestate, certain of the defendants inquired
of him under what authority he occupied the premises,
and Johnson informed them that he held under a writ-
ten lease for a term of years, and exhibited the lease to
them.   Upon looking at the lease they concluded that
it was invalid, and after they had purchased the property,
served him with a notice to vacate the premises within
sixty days, treating him as a tenant at will.   In reply
to this notice he wrote the defendants a letter insisting
on his right to remain on the premises under the written
lease.   He did not mention any other lease until after
the expiration of the sixty days and his expulsion from
the premises.   It further appears, that prior to this ac-
tion a suit was instituted by him against the defendants,
predicated upon the written lease above referred to.
The present action is founded on a verbal lease or rent-
ing for one year.   The defendants insisted that under
the facts above recited, the plaintiff was estopped from
setting up any other lease than the written one.   If the
defendants had no notice of the verbal lease when they
sued out the warrant to expel Johnson from the prem-
ises, we would be inclined to hold that Johnson's con-
duct in insisting upon the written lease and not disclos-
ing that there was any other, would amount to an estop-
pel; but it appears from the record that before the de-
fendants commenced the proceedings to dispossess John-
son, they were informed by the agent of Jones, the prior
landlord, that he, as Jones' agent, had rented the prem-
ises for that year to Johnson; that this was a verbal

lease or renting, and that Johnson was entitled to the premises for the remainder of the year. With this notice of the verbal lease on the part of the defendants, we cannot hold that the plaintiff is estopped from setting up the same; and we think it was a matter to be determined by the jury whether the defendants, in suing out the dispossessory warrant and having the same executed, acted without malice and with probable cause.

*Judgment reversed.*